This case was removed from state court to federal court. It was done so on a federal question because there was numerous issues involving EPA and OSHA violations. At that time, I believe that there was a federal question, and I did not oppose removal. Shortly thereafter, in addition to that ---- Counsel, that was one of my questions, why you didn't oppose it at that time. You say you thought there was a federal question? I believe there was a federal question. Because? Because substantial issues were being raised with OSHA and EPA and the enforcement of OSHA and EPA regulations by the Board of Air Quality there in Washoe County. And I believe it was there. So you were wrong about the law? I'm not sure that I was wrong, but I did ---- Well, it's our job to see whether you were wrong as well as the judge. Shortly thereafter, I just want to say it's shortly thereafter, then my clients moved out of state, so we had diversity jurisdictions. We wanted to go to that issue. But at that time, I ---- and we litigated the thing in good faith. Both counsel, they filed their motion. I believe they believed there was jurisdiction, and I believe there was, too. It wasn't until I started briefing this question that I specifically had to address this and say, what is ---- how do you rely on this? The issue is the jurisdiction. I started doing the research. I said ---- and I discovered that there is no private right of action, and there was probably ---- there was not jurisdiction, and I alerted the Court to that issue. And that's why I brought it up. However, if you ---- and then the Court asked us to review the Rings decision and the excuse me, here you are, the Grabo decision of the Supreme Court. Under Rings, I probably ---- we don't have jurisdiction. But under Grabo, if you apply the holding Grabo, I think there probably is. What is your argument here? Are you arguing that there is jurisdiction? Yes, I believe there is jurisdiction. I just ---- You're arguing the wrong side of this case. Yeah. Well, the Court asked me. I wasn't the ---- when I was ---- when I filed my brief, I didn't really want the case removed. I want this ---- I want this appeal decided on its merits. Yeah. There will be, but the question is in which court. Yes. And I believe ---- You didn't do too well in the Federal court, so ---- But I had ---- I know I haven't, but I had to address the issue. The Court asked me to address the issue, and I alerted the Court that there may be a jurisdictional issue in here. And that's ---- that was my point of doing it. It wasn't my point of trying to remove it at that time or trying to say it should be removed. There are so many intricate issues in this involving the EPA and particularly in the OSHA requirements. Under the Grable decision, I think it gets to that ---- it's so intricately related, it gets to that point that the Court ---- this case cannot be decided without looking at those issues and looking at them and reviewing and adjudicating on them. But isn't this case different from Grable or any of the other cases cited in your supplemental brief? There's no possibility, is there, that OSHA or any other Federal agency's ability to carry out its duties will be affected, and no rights created by Federal law are at issue as they were in Grable? Well, there are questions in here about the Air Quality ---- the Washoe County Air Quality Board, which enforces the OSHA requirements there, the EPA requirements in Washoe County. Their involvement, their action and inactions. There was a complaint made to them, and the actions they took is an intricate part of this, and did they comply with their legal obligation I think would have to be an issue addressed in this case. So I think the issue does, I think, raises that point. I understand what you're stating. I don't necessarily agree with it. Yeah. It only makes three of you in this case we might have to reverse. Well, I don't think we need to bring in ---- no, we will not have to bring in the Air Quality Board as a party. No, no. As I said, this case, this case is ready to go. I mean, we've done a tremendous amount of work on it. I would, you know, I'd like to have ---- I said, yes, I did. I haven't done very well in Federal court up to this point. However, I think if the merits of the actual appeal and the reason the case was decided against Mr. Glanton, I believe we have a good position. Should I address those, or do you want me to continue? You have some more questions about the jurisdictional issue. Okay. Well, just give it your best shot on the merits about why you should have won. Okay. Well, there are just unlimited issues of fact in this case. There was that the court below ignored. The court ---- to give you a brief synopsis of what happened there is up in the rooms in the what they call the north tower of the hotel, all the guest rooms, the interstitial space, which I refer to as the crawl space, is approximately 5 feet between the ceiling and the next floor up. And that's where they have all their mechanical equipment, such as the air conditioning, heating units, piping and everything else. It's all run up in that area. In approximately 2001, the county ---- the Washington County Air Quality Board was out there and reviewed it and gave an opinion that they believed that the interstitial spaces had been contaminated with asbestos. And what the reason was is in each one of those rooms there's four beams that run the full length of the building. They're approximately 5 feet high, and they're covered with a fire retardant. And it's been established that that fire retardant contains somewhere between 50% to 90% asbestos. And over the period of time, the fire retardant has started to decay and fall off the ---- and falling onto the deck below. And it's ---- in the record, there's several pictures of it, what it looks like, what that condition is. Okay. Now, so this is toxic and it's poisonous and it's bad for his health. Yes. And I'm circling back to jurisdiction now to make sure that I understand. And it is contrary to OSHA requirements for safe workplace? Yeah. Well, at that time, the EPA, what they call the PULE level, which is the permissible ---- I forgot what E stands for. It's something limited. The permissible level is that if it's over a .1 when they measure it, I don't know. And asbestos is microscopic. You cannot see it. Right. You cannot smell it. You cannot ---- when you see it, you cannot see it. So it's not a known danger. You can't appreciate the danger just by looking at it. It could be extremely, highly dangerous. Well, in fact, it is, as I argued. I got sidetracked. The question was, is it your position that this is a Federal question case because it's the Federal standards were violated in making this a toxic workplace? Yes. When they did the study, what happened, the person from the EPA or actually from the Air Quality Board opined that he believed there was a problem there. HERA's went out and retained a private party, private engineers, and they reviewed and they went up and measured the levels there. And they reported back that all the levels there exceeded the Federal levels and that they had to do something about it or they would face Federal fines and there would be ramifications they didn't do something about it. Okay. And so then they made a determination how they were going to address the issue. That time they brought in a report review and they wrote a report what they needed to do to address the issues. And in there, once again, that report dovetails all these EPA regulations and OSHA regulations. Okay. So the district court got it wrong. Because one thing, they did not, once they had the report, the report requires them to do site testing annually, personal testing. Mr. Glanton, although he requested, his supervisor, his director, Mr. Don Long, who is head of the, specifically requested the right to do personal testing. They were denied. You're out of time. Okay. But the ultimate disputed material issue of fact is what? Well, that they did not, that the judge basically said, well, they did a good, their efforts, what they did when they did their abatement program were sufficient. We're good enough. And I'm saying, and my argument is, I addressed in my presentation. And we're good enough under what standard? Under any standard it wasn't good enough. They tried because of the law. Oh, no. The district court. Well, the district court just said, essentially said that they addressed the issue. And it doesn't go from there. It just said they did a good, they addressed the issue after they were on notice of it, and they remedied it. Okay. But, in fact, they did not remedy it. And that's the whole point of my argument. Thank you. Good morning. May it please the Court. My name is Rick Ross Kelly. I'm here on behalf of the appellees in this case. I can see I've got my work cut out for me this morning. Let me address the Federal question jurisdiction. As this Court is well aware, there are two matters in which two ways Federal question jurisdiction may be invoked. One is when it's invoked by the pleading, by the plaintiff pleading a cause of action under Federal law. That didn't happen in this case. So if we have Federal jurisdiction today, it is based upon the second method, and that is when we have a State law claim that implicates significant Federal issues. We believe that that is what we have here. We believe that this case is distinguishable from this Court's decision in Rains and falls much closer, if not squarely on point, with Grable. Let me address the Rains case first briefly. In Rains, this Court, Judge Reinhart writing for the Court, said that there was not Federal question jurisdiction because the plaintiff in that case had two alternate State causes, or not causes of action, but claims under the State claim. The State claim was a public policy claim. The plaintiff in that case said public policy is violated because the Federal Title VII prohibits religious discrimination, California law prohibits religious discrimination, and the California Constitution prohibits discrimination. This Court said, well, we don't have to look at all three. If we look and see that there's a separate independent alternative State cause of action here or a basis for the State claim, i.e., the Constitution, then we see that there is a separate State grounds for finding public policy. We don't have to or we don't have Federal jurisdiction because this is not based exclusively on the public policy under Federal law. And the Court also left open the question, it did not address specifically in footnote 7, the issue of what happens if we have a State law that adopts by implication or specifically adopts Federal law. I would submit that we have in this case perhaps the question was left open in footnote 7, and that is we have at we have, it's our contention that, number one, this case was litigated and pled as a violation of Federal EPA and OSHA statutes. Straightforward. Worst-case scenario, if you're going to find a State law. Kennedy, how can you say it's pled simply on Federal stand? It repeatedly says it's a violation of State laws and regulations. It does, Your Honor, and it's looking towards the, it's a constructive discharge public policy tort that relies specifically on Federal standards. Now, it does mention State regulations or State standards, but those regulations are the Federal regulations because Nevada has adopted the Fed OSHA program. Well, what I don't see, I'm not sure I understand how that works. If State law were to say that if you don't follow Federal safety requirements, then you're negligent per se, and an automobile manufacturer doesn't follow Federal standards and the seat belt mechanism fails, that doesn't turn an action in State court, product liability or whatever, action against the manufacturer in State court into a Federal case, does it? No, it doesn't, because this is not a per se standard. And that's the other way I was going to differentiate this case from the Supreme Court decision in Merrill Dow. And that is that we're not dealing with a negligent standard here. We're dealing with an intentional standard. By very fact of the tort that's alleged, we're alleging a constructive discharge, which is an intentional tort. It's not a negligent tort. The part of the Nevada Supreme Court planks for that tort, you have to show that the plaintiff or the defendant, the employer in this case, knew or should have known the unsafe conditions. Sotomayor, so if we're in California, and the California Supreme Court says it's a constructive discharge if you tell a person that he has to continue working under conditions that violate Federal standards, and, therefore, that he has an action against the employer for constructive discharge, and because he quits, says, I'm not going to do it, is that a Federal case? In that particular situation, I believe it would be a Federal case where they're relying specifically on Federal standard and the enforcement of those Federal standards. Well, if the argument is going to be made, how would the State court ever get to the point of deciding that that's constructive discharge under State law? Under your theory, just remove it as soon as the argument was made, and then we wouldn't  Well, the issue, though, is under the public policy tort and under constructive discharge, there's a whole panoply of allegations that can be made. Federal OSHA requirements or EPA requirements are just a very small portion. In fact, Nevada has recognized public policy torts in the area of workers' compensation, which is clearly a workers' compensation or a State issue only, and that's where the law has been developed. It's also recognized public policy torts in other domain that are other areas that are clearly under State law domain. We're saying in this small area, there's an exception carved out because the plaintiff in this case alleged specifically, and his whole case turns on, proving violation of numerous Federal regulations and statutes. On top of that, Nevada has specifically adopted the Federal regulations as its regulations for enforcing OSHA standards. And as I read our cases, in order to say that there is Federal jurisdiction, there has to be a possibility that OSHA or any other Federal agency ability to carry out its duties will be affected. Here, no Federal agency will be affected. I would disagree in the fact that here we had a situation where we had OSHA and EPA come in, there were complaints filed, they came in on numerous occasions, they reviewed the situation, they approved the plan that was in process. They failed. They did not issue any citations. And what Mr. Goldman is asking then the court to do, the Nevada court, if it goes to Nevada State court, would be to determine the validity, or not the validity, but the application of a Federal regulation which would have case law out there that may be of impediment to a Federal agency or a State agency enforcing Federal regulations. Well, there's no private cause of action, and OSHA has its own internal policies for handling these kinds of complaints. So I guess I'm failing to see how allowing this here in Federal court would affect them in any way. There is no private cause of action. You are correct. But what happens is, is those, the case law that is decided becomes standard for employers challenging the decisions made by OSHA or the State agency. Those do work their way up through the court. It's not just the agency dealing with those on a one-time basis. Those will go to a review board. Those will go then for review by a trial court or the appellate court, depending upon the jurisdiction that they're in. So we believe that it can substantially interfere with the employers, with the interpretation application of those standards. Are you saying that in Nevada nothing can be a violation of State public policy regarding health and safety unless it's contained in an OSHA regulation? No, because Nevada has also implemented their own separate standards. As you're well aware, Federal OSHA says all States must have at least a minimum, well, they can either go strictly under Federal OSHA or they adopt a State plan. Their plan has to be at least as effective as Federal OSHA. Well, Nevada has adopted all of the Federal OSHA regulations. But on top of that, they have added their own regulations regarding cranes, regarding boilers, regarding explosive manufacturers, et cetera. So those are clearly only dealing with State concern. But to the extent that Nevada rests its laws specifically and only on Federal law, which is the case here, and the plaintiff in this case has specifically pled violation, repeatedly pled violation of Federal OSHA and EPA laws, we believe that that's a narrow exception to the State regulations, State statutes, and State policies. The problem is, is as the case was litigated, there were no others. The only region that was litigated. Well, it shouldn't have been litigated, so we don't get to that. But it was. I shouldn't say if your opponent's correct. If the law is contrary to what you both think and we have no jurisdiction, then it shouldn't have been litigated. We have to look at the pleadings. You're correct, but we believe under Grable that this is a situation where it's much closer to the Grable decision than it was to the Raines decision for the reason that we had a significant State or, excuse me, a significant Federal issue that was actually disputed. We had a dispute over the meaning of the Federal regulations, what the employer's obligation was. We believe those were substantial. And the only question I believe really is whether or not that falls within the congressionally approved balance between the Federal and State jurisdiction. We would submit – see, my time is just about up. We would submit that it does fall within Grable still. Thank you. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is
judges: Schroeder, Nelson, Reinhardt